DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 1:11-23-1 |
| | : | |
| KAREEM B LOUIS | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                February 25, 2026

Incarcerated persons owing fines to the United States as part of their criminal sentence are subject to court orders allowing the United States to recover those fines. Fines would have no meaning if the United States could not collect them. Incarcerated persons holding money in their inmate trust account cannot somehow avoid repaying the fine they would owe if released from custody. Incarceration does not delay the fine payment obligations unless directed by the sentencing judge when sentenced or if the sentence is later modified. We today address how the United States may attempt to collect a portion of the fine from substantial funds held by a person in custody. The incarcerated person wants to avoid paying his fine. The United States is entitled to collect on the fine from the substantial funds held by the incarcerated person while in custody. We today direct the Bureau of Prisons to turn over the requested $900 in the incarcerated person's account to partially satisfy the over $47,000 now owed in principal on a fine. We are not persuaded by the incarcerated person's several objections other than they confirm his notice and opportunity to be heard before withdrawing the requested $900.

   **I.    Facts**

Our jury found Kareem Louis guilty of eight crimes in 2012.[1] Judge Lewis sentenced Mr. Louis in 2013 to twenty-two years in custody and five years of supervised release. She imposed financial obligation in the amounts of $150 in restitution, $50,000 as a criminal monetary penalty,

and $200 as a special assessment.² Judge Lewis did not impose a timeline for paying the restitution, special assessment, or criminal monetary penalty. The Bureau of Prisons presently holds Mr. Louis in custody with a release date of December 4, 2027.

Mr. Louis presently owes $47,582.72 in principal on his criminal fine obligation. The United States moves to withdraw funds held in Mr. Louis's inmate trust account to be applied to Mr. Louis's outstanding fine amount. The United States represents Mr. Louis holds "substantial funds" in his account. The United States asks we direct the Bureau of Prisons to withdraw $900 from Mr. Louis's account to apply to his outstanding fine balance.³ The United States requested the Bureau of Prisons to freeze a portion of the funds in Mr. Louis's account up to requested $900.⁴ Mr. Louis counters asking we direct the Bureau of Prisons reverse the freeze on the funds in his account.⁵

**II.      Analysis**

The United States seeks to withdraw $900 from Mr. Louis's account. It froze $900 in Mr. Louis's account. The United States argues: (1) "a lien exists on the funds" in Mr. Louis's account as the fine is part of Judge Lewis's sentence; (2) it is "not required to rely upon other formal collection remedies such as garnishment or execution" to collect on the fine; and (3) the cash request "does not fall within any applicable categories" of property Mr. Louis may claim as exempt from collection.⁶ Mr. Louis seeks to have the freeze lifted, prevent the United States from withdrawing these funds, and to regain access to the $900.00. Mr. Louis counters the Bureau of Prisons confiscated funds "without affording him a due process hearing, or the change to raise his objections."⁷ We find the United States is properly acting within its authority in requesting authorization of a payment of $900 from Mr. Louis's account. We grant the United States' requested relief.

The United States "may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."[8] "Notwithstanding any other Federal law . . . a judgment imposing a fine may be enforced against all property or rights to property of the person fined," with certain exceptions.[9] Further, "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed."[10] The United States is "responsible for collection of an unpaid fine" and is properly using its statutory authority to do so when seeking the authorization of payments from an Inmate's Trust Account.[11]

Our Court of Appeals confirms we may direct the withdrawal of funds.[12] In *Rios*, the United States sought $970.96 from an incarcerated person's inmate trust account to satisfy the remaining balance on his criminal fine.[13] The incarcerated individual resisted this withdrawal of funds, claiming it exceed the terms of his plea agreement, which permitted fifty percent of the funds deposited into his prison account—excluding a telephone allowance—to be withdrawn every three months. Our Court of Appeals found the incarcerated individual had "not shown that the payment at issue goes beyond the terms of the schedule in the plea agreement." Our Court of Appeals further agreed the $5,000 in the trust account represented a "substantial resource" as defined by Congress under which requires a person "who receives substantial resources during incarceration is required to apply the resources to pay [their] fine."[14]

Authorization of the withdrawal of funds from Mr. Louis's account is not without due process.[15] While our Court of Appeals has not directly opined on this issue, the Court of Appeals for the Tenth Circuit has held, in this context, due process constitutes notice of the United States's

intent to withdraw funds from an incarcerated individual's account and apply the funds to an outstanding fine obligation as well as an opportunity to respond.[16] This notice accords with the "barebones" approach to notice and opportunity to respond, constituting sufficient due process, which our Court of Appeals approves in a forfeiture context.[17] Judge Lewis lawfully sentenced Mr. Louis following conviction including an outstanding criminal fine amount which the United States is entitled to collect.[18] The United States moved for these funds with notice of its intent to seek authorization of the withdrawal of the funds.[19] Mr. Louis had the opportunity to voice his objections and repeatedly object to the withdrawal of funds.[20] We afforded Mr. Louis due process before allowing the United States to collect the requested $900.

We are further persuaded by our colleagues' analysis. Judge Lewis four years ago in *Riviere* authorized a requested payment of $1,820—representing approximately thirty percent of the total amount of $6,027.72 in the account—from an incarcerated person's account to be credited to an outstanding fine balance.[21] Judge Lewis also authorized earlier this month in *Hodge* a requested payment of $1,300.00 towards an outstanding criminal penalty in the amount of $1,603.21.[22] Judge Lewis authorized payments as a percentage of an incarcerated person's account balance last Summer in *Archibald*, authorizing a payment of fifty percent of the incarcerated person's accounts up to a maximum amount of outstanding $1,014.08 restitution consistent with the terms of the sentence.[23]

We face a $47,582.72 balance—representing the majority of Mr. Louis's considerable fine—owed on Mr. Louis's criminal penalty after over thirteen years of Mr. Louis's incarceration and five years since the United States requested the authorization of $900 from the "substantial funds" present in Mr. Louis's account. We grant the United States's requested relief in the amount that they request.

4

Mr. Louis counters we "did not acquire personal or subject matter jurisdiction to 'garnish' his commissary account"; the removal of funds does not comport with how "the fine is required be paid" under 18 U.S.C. § 3613; and, regulations defined in 28 C.F.R. §§ 506.1, 545.11 do not give the Bureau of Prisons the authority to release his funds without his consent.[24] He is mistaken.

Congress through section 3613 of Title 18 of the United States Code grants the United States to right to seek the $900: when a criminal fine is imposed at the time of sentencing, it "is a lien in favor of the United States on all property and rights to property of the person fined[.]" We find further guidance in the regulations addressing the finances in correctional facilities including at 28 C.F.R. §§ 506.1 and 545.1 which state the purpose of a commissary account and establish procedures for the Inmate Financial Responsibility Program. We recognize these regulations to not grant the Bureau of Prisons unilateral authority to release Mr. Louis's funds without his consent.[25] But these regulations also do not prevent the Bureau of Prison from obeying a court order authorizing the withdrawal of funds from an incarcerated individual's account without the individual's consent. Mr. Louis is thus incorrect in his legal analysis. We do not "lack[] authority" based on his view the Bureau of Prisons enjoys exclusive authority to collect forfeiture judgment under its Inmate Financial Responsibility Program.[26] Mr. Louis's reference to 28 C.F.R § 545.11 and the Bureau of Prisons' procedures for the Inmate Financial Responsibility Program do not alter the United States's ability to seek payment on outstanding fine amounts and our ability to authorize those payments.

Mr. Louis also claims the Bureau of Prisons released his account statement to the United States Attorney's Office without his consent "in violation of the Freedom of Information and Privacy Act under 5 U.S.C. § 552."[27] Congress, through the Freedom of Information Act and the Privacy Act, allows individuals to request records from the government, request records in the

5

government's possession be amended, and challenge the government's withholding of records.[28] Congress did not within Freedom of Information Act or the Privacy Act require the Bureau of Prisons to obtain Mr. Louis's consent before releasing his account statement to the United States Attorney's Office.[29] He cannot rely upon these acts of Congress. He is not seeking information and no one is precluding him from accessing his information.

### III. Conclusion

The United States moves for a $900 payment from Mr. Louis's inmate trust account to satisfy, in part, Mr. Louis's outstanding $47,582.72 criminal fine.[30] The United States is acting within its statutory authority when it seeks this relief. Mr. Louis is unhappy with the United States's freezing of this $900 portion of his account balance. But his unhappiness does not deprive us of the ability to grant the United States's requested relief. He owes this criminal fine. His time in custody does not toll his obligations. We today grant the United States's motion allowing it to direct the Bureau of Prisons to lift the freeze on the $900 to be forthwith paid and applied to the outstanding fine balance.

---

[1] Our grand jury charged Kareem Louis and his brother Raheem Louis with a series of offenses arising from the theft at gunpoint of a car at the Richmond Flea Market on St. Croix. *See United States v. Louis*, 596 F. App'x 167 (3d Cir. 2015) (denying Kareem Louis's challenge to his conviction on various grounds). The grand jury charged Mr. Louis with carjacking under 18 U.S.C. § 2119(1), using and carrying a firearm during a crime of violence under 18 U.S.C. § 924(c), felon in possession of a firearm under18 U.S.C. §§ 922(g)(1) and 924(a)(2), robbery in the first degree under 14 V.I.C. § 1862(2), unauthorized possession of a firearm during a violent crime under 14 V.I.C. § 2253(a), unauthorized possession of a firearm, unauthorized use of a vehicle under 14 V.I.C. §§ 1382 and 11, possession of stolen property under 14 V.I.C. §§ 2101(a) and 11, and assault in the third degree under 14 V.I.C. § 297(2).

Our jury convicted Mr. Louis after trial of all counts except for felon in possession of a firearm under section 922(g). *Louis*, 596 F. App'x at 169, n.2.

[2] Judge Lewis sentenced Mr. Louis to a total of 264 months of imprisonment. ECFs 226, 228; *see also Louis*, 596 F. App'x at 170 (detailing the term of imprisonment imposed for each count). Judge Lewis ordered the $150.00 restitution amount to be paid jointly and severally with Mr.

Louis's brother Raheem Louis. ECF 226 at 7. Judge Lewis ordered Mr. Louis to pay a fine in the amount of $25,000.00 for Count 5 and Count 6 each. ECF 228 at 3.

[3] ECF 386 at 2.

[4] ECF 399 at 1.

[5] ECFs 389, 390, 398.

[6] ECF 386 at 2–3.

[7] ECF 398 at 4. Mr. Louis also makes a number of unsubstantiated claims, like "the Bureau of Prisons has unlawfully seized the defendant's Commissary profit fund for employees['] private parties on holidays, or staff programs Congress did not authorize and the F.B.I. turns a blind eye too[.]" *Id.* at 6–7. We will not entertain his implausible allegations.

[8] 18 U.S.C. § 3613(a).

[9] *Id.* Congress affords identified exceptions: (1) "wearing apparel and school books"; (2) "fuel, provisions, furniture, and personal effects"; (3) "books and tools of a trade, business, or profession"; (4) "unemployment benefits"; (5) "undelivered mail"; (6) "certain annuity and pension payments"; (7) "workmen's compensation"; (8) "judgments for support of minor children"; (9) "certain service-connected disability payments"; and (10) "assistance under the Job Training Partnership Act." 18 U.S.C. § 3613(a)(1) (exempting the property listed in 26 U.S.C. § 6334(a)(1)–(8), (10), and (12) from the property against which a fine may be sought).

[10] 18 U.S.C. § 3664(n).

[11] *See United States v. Riviere*, No. 96-cr-77, 2022 WL 2751608 at *3 (D.V.I. July 13, 2022) (citing 18 U.S.C. § 3612(c) and cases in support); *see also United States v. Norwood*, No. 96-cr-232, 2020 WL 773065 at *4 (D.N.J. Feb. 18, 2020), *vacated on other grounds*, 819 F. App'x 124 (3d Cir. 2020) ("Numerous courts have authorized the precise type of relief sought in this case [for the United States to collect funds from a defendant's account to satisfy an outstanding fine or restitution.]").

[12] *See United States v. Rios*, 835 F. App'x 684, 686 & n.2 (3d Cir. 2021); *but see United States v. Norwood*, 49 F.4th 189 (3d Cir. 2022) (denying similar request for relief on the basis that the sentencing court imposed restitution on the defendant under the Victim and Witness Protection Act of 1982, which had a twenty-year limit on the duration of the restitution liability, and the United States' request exceeded that twenty-year time period).

[13] *Rios*, 835 F. App'x at 685.

[14] *Id.* at 686 (quoting 18 U.S.C.§ 3664(n)).

[15] ECF 394 at 4.

---

[16] *United States v. Charging Crow*, No. 22-8011, 2022 WL 17348099 at *2 (10th Cir. Dec. 1, 2022) ("There is also no merit to Mr. Charging Crow's argument that he was denied due process. The United States served a copy of its motion on him, and the district court promptly considered his belated response in opposition and entered its order. Nothing more was required." (citing *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) ("The core of due process is the right to notice and a meaningful opportunity to be heard."))).

[17] *United States v. Sarbello*, 985 F.2d 716, 719–20 (3d Cir. 1993) ("In short, the forfeiture indictment need only track in some minimal form the language of the applicable statute in order to permit a responsive defense strategy. Forfeiture notice, 'barebones' as the courts have permitted, is mandatory under the Rule, and a minimal compliance with the Rule also serves to satisfy the Constitution's notice requirements, albeit some other form of notice may be adequate for purposes of constitutional due process.").

[18] *See also United States v. Kendrick*, No. 10-cr-6096, 2022 WL 1819390 at *5 (W.D.N.Y. June 3, 2022) (Congress through "Section 3664(n) affirmatively mandates an incarcerated defendant apply 'substantial resources' to any fine is 'still owed'—is, to any portion of the total fine that has yet to be satisfied[.]").

[19] ECF 386.

[20] ECFs. 389, 390, 398.

[21] *Riviere*, 2022 WL 2751608 at *3.

[22] *United States v. Hodge*, No. 2016-cr-9-03, 2026 WL 415149 at *2 (D.V.I. Feb. 15, 2026).

[23] *United States v. Archibald*, No. 2015-cr-41, 2025 WL 2306222 at *3 (D.V.I. Aug. 11, 2025). The United States is not today seeking more than the $900 presently frozen in Mr. Louis's account. We do not today opine on its ability to seek further sums in repayment possibly held in Mr. Louis's account.

[24] ECF 390 at 1, *and then* ECF 389 at 2.

[25] The Department of Justice directs, through 28 C.F.R. § 506.1, "[t]he purpose of individual inmate commissary accounts is to allow the Bureau to maintain inmates' monies while they are incarcerated. Family, friends, or other sources may deposit funds into these accounts," and therefore is not relevant to the inquiry at hand as it does not bear on the United States's ability to collect on an unpaid criminal penalty. The Department of Justice directs, through 28 C.F.R. § 545.11, the procedures used by the Bureau of Prisons for "[w]hen an inmate has a financial obligation, [so that the] unit staff [] help that inmate develop a financial plan and [] monitor the inmate's progress in meeting that obligation."

[26] *Norwood*, 2020 WL 773065 at *3.

[27] ECF 398 at 4.

[28] 5 U.S.C. §§ 552, 552(a).

8

---

[29] *See Pipko v. C.I.A.*, 312 F. Supp. 2d 669, 675 (D.N.J. 2004) (The Freedom of Information Act "requires federal agencies to disclose, upon request, broad classes of agency records unless those records are covered by the statute's exemptions. . . . The Privacy Act provides individuals access to records of personal information maintained about them by the federal government.").

[30] We do not address whether the United States can return for more recovery as it does not seek more than $900 today.